[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 12, 2007
THOMAS K. KAHN
CLERK

No. 05-16518
_____

D.C. Docket No. 04-00357-CB-L
BKCY N. 01-14918-BKC-WS

IN RE ROBIN POE and DENISE POE,

                                        Debtors.

_____

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

                                        Plaintiff-Appellant,

versus

ROBIN R. POE, DENISE POE,
UNION PLANTERS BANK, N.A.,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(February 12, 2007)**

Before CARNES and MARCUS, Circuit Judges, and JORDAN,* District Judge.

JORDAN, District Judge:

This bankruptcy appeal requires us to interpret Alabama's redemption statute, Ala. Code § 6-5-248, in the context of a messy set of facts involving two parcels of a subdivided tract of real property. The bankruptcy court held that the right of redemption belonging to the appellant, Commonwealth Land Title Insurance Company, applied to both parcels, while the district court ruled that the right was limited to one of the parcels. For the reasons which follow, we agree with the bankruptcy court, and reverse the decision of the district court.

**I**

Alabama law recognizes a statutory right of redemption, which entitles certain persons, including "debtors," to obtain title to foreclosed property within one year of the foreclosure sale by tendering the price paid at the sale plus interest and other lawful charges. *See* Ala. Code §§ 6-5-248(a)(1) & (b), 6-5-253(a); *Bockman v. WCH, L.L.C..* 2006 WL 1361126, *2 (Ala. 2006). This statutory right of redemption may be transferred or assigned, and the transferee of the right need not have a property interest in the real property sold in order to redeem. *See* Ala. Code § 6-5-248(a)(5).

_____

    \* Honorable Adalberto Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

**A**

This dispute in this case relates to the ownership of a one-acre tract of land in Baldwin County, Alabama. Clell and Krystine Hobson purchased the tract in 1995, and subdivided it into two parcels, "Parcel 1" and "Parcel 2," four years later. The Hobsons' entire tract, comprised of Parcel 1 and Parcel 2, was subject to and secured by a first mortgage to Long Beach Mortgage Company.

The Hobsons sold Parcel 1 to Dale Zuehlke in January of 2000, with the deed being promptly recorded. The Hobsons kept Parcel 2, which was larger and included their residence. As part of Ms. Zuehlke's purchase, Long Beach agreed to release Parcel 1 from the mortgage. The parties executed the partial release on December 16, 1999, but the release was not recorded until April 24, 2001, leaving the entire tract subject to the mortgage, and setting in motion the events leading to this appeal.

Sometime in 2000, the Hobsons' mortgage went into default, and on November 28, 2000, First Union National Bank, the assignee of the mortgage, held a foreclosure sale. First Union was the high bidder at the sale, and took title to the entire one-acre tract, including Parcel 1 – which as noted had been sold to Ms. Zuehlke – via a foreclosure deed. The foreclosure deed stated that the transfer was subject to the statutory rights of redemption under Alabama law. The foreclosure sale price was insufficient to satisfy the Hobsons' debt to First Union. As a result, the Hobsons

3

remained liable on the debt for the deficiency.

On March 20, 2001, the appellees, Robin and Denise Poe, purchased the entire one-acre tract, including Parcel 1, from First Union. The deed obtained by the Poes stated that their interest in the property was subject to the rights of redemption of all persons entitled to redeem the property from the earlier foreclosure sale.

**B**

It appears that Ms. Zuehlke's attorney realized that there was a conflict between the claims of Ms. Zuehlke and the Poes to Parcel 1. Ms. Zuehlke therefore sought to purchase the Hobsons' statutory right of redemption to protect her interest in Parcel 1.[1] The Hobsons executed an assignment of their statutory right of redemption to Ms. Zuehlke's agent on June 18, 2001. The agent subsequently assigned the right to Ms. Zuehlke, who then assigned it to Commonwealth.

Ms. Zuehlke, through her agent, timely sought to exercise the Hobsons' right of redemption. On June 22, 2001, Ms. Zuehlke sent a letter to Robin Poe stating that she had acquired the right of redemption and requesting a statement of the debt. Subsequent exchanges between the parties did not result in an agreement on the valuation of the tract.

---

[1] If Ms. Zuehlke could purchase the Hobsons' right of redemption, she would step into the Hobsons' shoes, pay the Poes the redemption price, and gain legal title to both Parcel 1 and Parcel 2.

The Poes filed for Chapter 7 bankruptcy on September 28, 2001. On that same day, Commonwealth, acting on Ms. Zuehlke's behalf, filed an adversary proceeding in bankruptcy court seeking a determination that it was entitled to redeem from foreclosure the entire one-acre tract of land owned by the Poes.

## C

The bankruptcy court granted Commonwealth's motion for summary judgment as to both parcels. The bankruptcy court concluded that the Hobsons were "debtors" under § 6-5-248(a)(1) as to the entire one-acre tract because they remained liable on the debt referred to in the foreclosure deed with respect to the entire tract. As debtors under the redemption statute, the Hobsons were entitled to redeem both parcels, and so was Commonwealth, as the ultimate transferee of the Hobsons' right of redemption. The bankruptcy court subsequently set a redemption price of $147,315.00,[2] and entered a judgment allocating the redemption proceeds and ordering the Poes to convey the entire tract to Commonwealth.

The Poes appealed the grant of summary judgment in favor of Commonwealth to the district court, which affirmed in part and reversed in part. The district court held that Commonwealth had the right to redeem Parcel 2, but not Parcel 1. The district court reasoned that the Hobsons did not have any debt as to Parcel 1 because

---

[2] The parties do not dispute the amount of the redemption price on appeal.

5

Long Beach had released Parcel 1 from the mortgage in connection with Ms. Zuehlke's purchase. Therefore, the district court concluded, the statutory right of redemption never arose as to Parcel 1 and the Hobsons did not have a right of redemption as to Parcel 1. Commonwealth now appeals.

## II

The only issue on appeal is the application of Alabama's redemption statute to undisputed facts. Our review is therefore plenary. *See, e.g., Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006); *In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000).

## III

Alabama's statutory right of redemption entitles "debtors," among others, to obtain title to foreclosed property within one year of the foreclosure sale by tendering the price paid at the foreclosure sale plus interest and other lawful charges. The right to redeem is triggered by the foreclosure sale, and the scope of what real estate may be redeemed is governed by what was sold at the foreclosure sale. *See* Ala. Code § 6-5-248(a) ("Where real estate . . . is sold the same may be redeemed by . . . (1) any debtor" or "(5) any transferee of the debtor . . . either before or after the sale[.]"). "The purpose of the [redemption] statutes is to allow the debtor to redeem, in all cases of sale, that which passed by the sale." *Sibley v. Linton Coal Co.*, 69 So. 1, 2 (Ala.

6

1914). By allowing redemption of real estate sold via foreclosure, the statute "prevent[s] the sacrifice of real estate at forced sales . . . and [ ] afford[s] the debtor, or his creditors, in payment of his debts, the advantage of any increase in the value of the lands, within the statutory period." *Memorial Shrines, Inc. v. McConnell*, 117 So.2d 684, 693 (Ala. 1960).

Commonwealth argues that the Hobsons were "debtors" as to Parcel 1 under § 6-5-248(a)(1) given that the entire one-acre tract was foreclosed. The Poes, on the other hand, say that the Hobsons were not "debtors" as to Parcel 1 because the Hobsons sold Parcel 1 to Ms. Zuehlke and because Long Beach released Parcel 1 from the mortgage. We agree with Commonwealth.

**A**

We first conclude that the sale of Parcel 1 to Ms. Zuehlke did not prevent the Hobsons from remaining "debtors" as to Parcel 1 under § 6-5-248(a)(1). "In construing a statute we must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir.1997). Although the term "debtor" is not statutorily defined, § 6-5-248 was amended in 1988, in part to clarify the meaning of that term. Specifically, the Alabama legislature amended the statute to include a new subsection (e), which now provides as follows:

7

> When any debtor or mortgagor conveys his interest in property subject to a mortgage prior to sale wherein they are released from liability for the debt, his right of redemption under this article is terminated. . . *However, where debtors or mortgagors have conveyed their interests in the property but remain liable on the debt and are debtors at the date of the foreclosure sale, the debtors and mortgagors retain their right of redemption under this article.*

§ 6-5-248(e) (emphasis added). If a person does not have any interest in the property sold, then several things are required under § 6-5-248(e) before he can be considered a debtor: the person must have owned the property subject to the mortgage that was foreclosed; the person must retain the liability associated with the property after selling the property; and the person must retain the liability associated with the property at the time of the foreclosure sale.

The official commentary to the redemption statute explains that subsection (e) was specifically added to "clarif[y] that *one could be a debtor without having any interest in the equity of redemption.*" § 6-5-248 cmt. (emphasis added). *See generally Sullens v. State*, 878 So.2d 1216, 1221 (Ala. Crim. App. 2003) (looking to official commentary to determine if statute created strict liability offense). The prior redemption statute had been interpreted by the Alabama courts to provide for a right of redemption only in persons "with an interest in the property." *See* § 6-5-248 cmt. As a result, under the pre-amendment version, any debtor or mortgagor who sold his property prior to the foreclosure sale lost his statutory right to redeem the property

8

following the foreclosure sale. *See, e.g., Dominex, Inc. v. Key*, 456 So.2d 1047, 1052-53 (Ala.1984) ("[A] mortgagor who has conveyed his equity of redemption cannot seek to redeem the property, before or after foreclosure."); *Sibley*, 69 So. at 2 ("The statutes were never intended to allow a debtor to redeem property as to which he had no title or interest, legal or equitable, at the time of sale; it is only when the sale cuts off or forecloses rights which he would have and could exercise but for the sale, that the statutory right of redemption is conferred."); *Commercial Real-Estate & Bldg. Ass'n v. Parker*, 4 So. 268, 269-70 (Ala. 1888) ("The very idea of redemption necessarily involves the correlative idea of an interest in the thing sought to be redeemed. It is the rescuing from sacrifice of the debtor's property [--] not the property of another. We construe the statute to confer the statutory right of redemption upon debtors only for the purpose of redeeming their own property [--] property in which they have some interest at the time of sale. If the debtor has parted with this interest, he has abandoned the right to redeem, because the right cannot exist except as an incident of ownership.").

This preoccupation with a debtor's continued interest in property was criticized by the Alabama Law Institute's advisory committee on proposed revisions to the redemption statute because it "prevented the court[s] from seeing that one could be a 'debtor' under the statute at the time of the foreclosure sale, without having any

9

interest in the equity of redemption." Alabama Law Institute, *Proposed Revision with Commentary: Redemption of Real Estate, Power of Sale, Deed in Lieu of Foreclosure* 16 (1987). *See also* Harry Cohen, *The Statutory Right of Redemption in Alabama: A New Statute is on the Horizon*, 39 Ala. L. Rev. 131, 139 (1987).[3]

For example, in *Butler v. Fayette Seed Farms, Inc.*, 195 So. 2d 534 (1967) -- a case discussed in the Alabama Law Institute's report -- Joe Butler, Sr., a one-third tenant in common in a parcel of land, jointly executed a mortgage on the land with the other tenants in common. Thereafter, Mr. Butler died, and his interest in the real estate passed to his widow, who subsequently conveyed her interest to her brother-in-law. The mortgagors then defaulted on their debt, and the mortgagee foreclosed on the property. Joe Butler, Jr., as a child of Joe Butler, Sr., timely sought to redeem the property under the Alabama redemption statute, which gave a right of redemption to the child of the debtor. The Alabama Supreme Court held that Joe Butler, Jr. could not redeem the property because he lacked "some nexus with the mortgage at the time of the foreclosure." *Butler*, 195 So. 2d at 535. Presumably, Joe Butler, Sr. or his estate remained liable for the payment of the debt securing the mortgage, but the Alabama Supreme Court failed to consider this possibility, and assumed that Joe

---

[3] Mr. Cohen was the reporter for the Alabama Law Institute's advisory committee on proposed revisions to the Alabama redemption statute.

Butler, Sr. was not a debtor because he did not continue to have an interest in the property. *See* Cohen, *Right of Redemption*, 39 Ala. L. Rev. at 138-139. For this reason, the Alabama Law Institute suggested that the redemption statute be amended to clarify the possibility that, in limited circumstances, a person may remain a debtor even though he no longer has an interest in the property:

> Under the proposed statute, . . . if the debtor or mortgagor, prior to a foreclosure sale, conveys an interest in the mortgaged property, the debtor's or mortgagor's right of redemption terminates under the proposed legislation. . . . If, however, the debtor or mortgagor remains personally liable on the debt and is still indebted at the date of execution or the foreclosure sale, the debtor or mortgagor retains the right of redemption . . . . Thus, while the concept underlying the *Butler* case is recognized, the error of the decision is rectified.

*Id.* at 141. The Alabama legislature adopted the Alabama Law Institute's proposal as the new subsection (e).

In sum, the language of subsection (e) provides that a person is a "debtor" under § 6-5-248(a)(1) -- notwithstanding the fact that he sold the property prior to the foreclosure sale -- if he previously owned the property subject to the mortgage that was foreclosed; retained the liability associated with the property after selling the property; and retained the liability associated with the property at the time of the foreclosure sale. This means that the Hobsons could remain "debtors" as to Parcel 1, notwithstanding the sale to Ms. Zuehlke, if they remained liable on the debt

11

associated with Parcel 1.

**B**

The district court concluded, and the Poes now argue, that the Hobsons did not remain liable on the debt because they were released from any debt associated with Parcel 1 when Long Beach released Parcel 1 from the mortgage. We disagree.

The Poes do not challenge the validity of First Union's foreclosure of Parcel 1, probably because their own title derives only from the foreclosure sale. The fact that Parcel 1 was foreclosed as a result of the Hobsons' default on their debt compels us to conclude that the Hobsons remained liable on the debt as to Parcel 1 for purposes of § 6-5-248(a)(1) & (e). First, Alabama is a title theory state, meaning that mortgaging property actually works a conveyance of legal title to the lender. *See Baxter v. South Trust Bank*, 584 So.2d 801, 804 (Ala. 1991). As a general matter, therefore, had there been no nexus between Parcel 1 and the Hobsons' debt to Long Beach, First Union could not have foreclosed on Parcel 1 on account of the Hobsons' default. *See Cottingham v. Citizens Bank*, 859 So.2d 414, 420 (Ala. 2003) ("[I]f there is no debt, there is no mortgage."). Second, it has long been the law of Alabama that a foreclosure or execution sale is binding on the purchaser for purposes of determining what redeemable interests of the mortgagor passed as a result of the sale:

> [I]t does not lie in the mouth of a purchaser at the foreclosure or

12

execution sale, who buys, takes, and pays for whatever interest the mortgagor or judgment debtor had in the land, to say, when they come to redeem and repurchase precisely the interest which thus passed, that they had not interest whatever in the land. . . . [T]he levy of the execution upon the land as the property of the defendant therein, and its sale and purchase as such, is conclusive on the purchaser for all the purposes of redemption [as to the fact] that the mortgagor . . . had an interest in the property which passed by the sale, and hence a redeemable interest under the statute after the sale.

*Henderson v. Prestwood*, 22 So. 15, 16 (Ala. 1897). Here, the Poes were able to purchase Parcel 1 only because it was part of the foreclosure sale triggered by the Hobsons' default. Under *Henderson*, the Poes are specifically bound by the fact that the Hobsons were liable on a debt as to Parcel 1. *See also Sibley,* 69 So. at 2 ("[O]ne who purchases at a foreclosure sale, and who has no other title or claim than that which he acquired at the sale, is not in a position to dispute the title of the mortgagor, or him from and through whom he claims to acquire title."). That a partial release of Parcel 1 was executed (and subsequently recorded) does not affect our determination because the release did not prevent the foreclosure sale, and it was the foreclosure sale that legally bound the Poes to the fact that the Hobsons were (and remained) liable on the debt. Accordingly, we conclude that the Hobsons remained liable on the debt as to Parcel 1, and were therefore "debtors" as to Parcel 1 under § 6-5-248(a)(1) & (e).

**IV**

13

The bankruptcy court correctly determined that the Hobsons were "debtors" as to Parcel 1. Commonwealth had a statutory right of redemption as to Parcel 1 by virtue of the Hobsons' transfer of their redemption rights to Commonwealth through Ms. Zuehlke. The district court's decision is therefore REVERSED, and the case is REMANDED for proceedings consistent with this opinion.